UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————
№ 17-CV-1420 (JFB)(AKT)
———————————

TRUSTEES OF THE NORTHEAST CARPENTERS HEALTH, PENSION, ANNUITY,
APPRENTICESHIP, AND LABOR MANAGEMENT COOPERATION FUNDS,

Petitioners,

VERSUS

AKWESASNE CONSTRUCTION, INC.,

Respondent.
———————————

**MEMORANDUM AND ORDER**
April 27, 2018
———————————

JOSEPH F. BIANCO, District Judge:

Petitioners, Trustees of the Northeast Carpenters Health, Pension, Annuity, Apprenticeship, and Labor Management Cooperation Funds ("petitioners" or "the Funds"), commenced this action to confirm two arbitration awards against Akwesasne Construction, Inc. ("respondent" or "Akwesasne Construction"). Petitioners also seek to recover attorney's fees and costs incurred in prosecuting this action. For the reasons set forth below, the Court confirms the arbitration awards and grants the motion for fees and costs.

I. BACKGROUND

A. Facts

The Court takes the following facts from the petition to confirm the arbitration awards ("the Petition") and the exhibits attached thereto. (ECF No. 1.)

At all relevant times, Akwesasne Construction was bound to a collective bargaining agreement (the "CBA") with the Northeast Regional Council of Carpenters (the "Union"). (Pet. ¶ 7.) The CBA required Akwesasne Construction to make contributions to the Funds for all work performed within the Union's trade and geographical jurisdiction. (*Id.* ¶ 8.)

Akwesasne Construction was also bound to a Joint Policy for Collection of Delinquent Contributions (the "Collection Policy"). (*Id.* ¶ 12; Ex. B.) Under the Collection Policy, employers were required to submit to a payroll audit on request by the Funds. (Pet. ¶ 13; Ex. B, art. 2.2.) If an employer's contributions to the Funds were found deficient, the Collection Policy awarded, in addition to the deficiency, interest, liquidated damages, attorney's fees, arbitration fees, and audit costs. (Pet. Ex. B,

arts. 2.1, 6.1, 6.3.) The Collection Policy subjected disputes relating to an employer's failure to remit contributions to arbitration before the Funds' designated arbitrator. (Pet. ¶ 18; Ex. B, art. 2.2.)

As relevant here, the Funds audited Akwesasne Construction, for the period from August 1, 2014 through March 31, 2016, to determine whether Akwesasne Construction had complied with its obligations under the CBA. (Pet. ¶ 16.) The auditor found that Akwesasne Construction failed to contribute $32,503.31 to the Funds during the relevant time period. (*Id.* ¶ 17.)

Accordingly, the Funds initiated arbitration under the Collection Policy and sent Akwesasne Construction a Notice of Intent to Arbitrate Delinquency. (*Id.* ¶ 20; Ex. C.) After conducting a hearing, the arbitrator found that Akwesasne Construction had violated the CBA and ordered Akwesasne Construction to pay the Funds $49,817.05, representing the $32,503.31 deficiency; $6,763.08 in interest; $6,500.66 in liquidated damages; $2,400.00 in audit costs; $900.00 for attorney's fees; and $750.00 for the arbitrator's fee. (Pet. ¶¶ 21-22; Ex. D.) A copy of the award was delivered to Akwesasne Construction. (Pet. ¶ 21.) Akwesasne Construction has failed to pay any portion of the award. (*Id.* ¶ 23.)

A second dispute arose when Akwesasne Construction failed to remit contributions for the period from July 1, 2016 through July 31, 2016. (*Id.* ¶ 24.) Again, the Funds initiated arbitration under the Collection Policy and sent Akwesasne Construction a Notice of Intent to Arbitrate. (*Id.* ¶ 25; Ex. E.) The arbitrator again found that Akwesasne Construction had violated the CBA and ordered Akwesasne Construction to pay the Funds $9,263.89, representing a $5,592.69 deficiency; $266.22 in interest; $1,754.98 in liquidated damages; $900.00 for attorney's fees; and $750.00 for the arbitrator's fee. (Pet. ¶¶ 26-27; Ex. F.) A copy of the award was delivered to Akwesasne Construction. (Pet. ¶ 26.) Akwesasne Construction has failed to pay any portion of the award. (*Id.* ¶ 28.)

B. Procedural History

On March 14, 2017, the Funds filed the Petition in this Court, seeking confirmation of the arbitrator's awards, as well as attorney's fees and costs incurred in prosecuting this action. Petitioners served respondent with the Petition on March 20, 2017. Respondent answered the Petition on June 22, 2017. On October 23, 2017, the Court held a telephone conference with the parties and set a briefing schedule, with respondent's opposition due December 8, 2017 and petitioners' reply due December 22, 2017. By letter dated December 6, 2017, respondent requested a sixty-day extension of time, until February 6, 2018, to submit its opposition. The Court granted the request by electronic Order dated December 11, 2017. On February 20, 2018, petitioners requested that the Court consider the Petition unopposed in light of respondent's failure to submit an opposition. By electronic Order dated April 25, 2018, the Court requested additional information related to petitioners' motion for attorney's fees. Petitioners provided that information the same day.

II. CONFIRMATION OF THE ARBITRATION AWARDS

A. Standard of Review

A motion to confirm an arbitral award should be "treated as akin to a motion for summary judgment." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006). The standard of review at the summary judgment stage is well-settled. A court may grant a motion for summary judgment under

Federal Rule of Civil Procedure 56(a) only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). "The moving party bears the burden of showing that he or she is entitled to summary judgment." *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). A court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment unwarranted if "evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party meets its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Thus, "the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. The nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars' showing that a trial is needed." *R.G. Grp. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Thus, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

B. Discussion

"Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 (1994) provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998). "Confirmation of a labor arbitration award under LMRA § 301 is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court.'" *N.Y. Med. Ctr. of Queens v. 1199 SEIU United Healthcare*

3

*Workers E.*, No. 11-CV-04421 (ENV)(RLM), 2012 WL 2179118, at *4 (E.D.N.Y. June 13, 2012) (quoting *N.Y.C. Dist. Council of Carpenters Pension Fund v. E. Millennium Constr., Inc.*, No. 03-CV-5122 (DAB), 2003 WL 22773355, at *2 (S.D.N.Y. Nov. 21, 2003)).

The Supreme Court has recognized that the LMRA expresses a "federal policy of settling labor disputes by arbitration," which "would be undermined if courts had the final say on the merits of the awards." *See United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 36-37 (1987) (quoting *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)). Accordingly, "the courts play only a limited role when asked to review the decision of an arbitrator." *Id.* at 36; *see also, e.g.*, *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001); *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Local 338, Affiliated with the Retail, Wholesale & Dep't Store Union, AFL–CIO*, 118 F.3d 892, 896 (2d Cir. 1997); *Local 1199, Drug, Hosp. & Health Care Emps. Union, RWDSU, AFL–CIO v. Brooks Drug Co.*, 956 F.2d 22, 24-25 (2d Cir. 1992). In this limited role, a court must confirm an arbitration award as long as it "'draws its essence from the collective bargaining agreement' and is not the arbitrator's 'own brand of industrial justice.'" *First Nat'l Supermarkets*, 118 F.3d at 896 (quoting *Misco*, 484 U.S. at 36). "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Major League Baseball Players Ass'n*, 532 U.S. at 509. Indeed, "serious error," and "improvident, even silly, factfinding do[ ] not provide a basis for a reviewing court to refuse to enforce the award." *Id.* (citations omitted).

Here, the Court concludes that the arbitrator's awards draw their essence from the CBA and that they are based on uncontroverted evidence that Akwesasne Construction failed to pay $32,503.31 in contributions to the Funds from August 1, 2014 through March 31, 2016, and $5,592.69 in contributions from July 1, 2016 through July 31, 2016. The Collection Policy entitles the Funds to recover those amounts, as well as additional amounts for interest, liquidated damages, attorney's fees, the arbitrator's fees, and audit costs, which, together with the delinquencies, support the awards of $49,817.05 and $9,263.89. Finally, nothing in the record suggests "that the arbitrator's award[s were] procured through fraud or dishonesty or that any other basis for overturning the award exists." *Trs. for the Mason Tenders Dist. Counsel Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Odessy Constr. Corp.*, No. 14-CV-1560 (GHW), 2014 WL 3844619, at *2 (S.D.N.Y. Aug. 1, 2014) (granting unopposed motion for summary judgment under LMRA). Accordingly, the Court confirms the arbitration awards.

### III. PETITIONERS' ENTITLEMENT TO ATTORNEY'S FEES AND COSTS

Petitioners also assert that they are entitled to attorney's fees and costs incurred in prosecuting this action.

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010). Neither LMRA § 301 nor the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* authorizes the award of attorney's fees in an action to confirm an arbitration award. *See, e.g.*, *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. TNS Mgmt. Servs., Inc.*, No. 13-CV-2716 (JMF), 2014

4

WL 100008, at *4 (S.D.N.Y. Jan. 10, 2014); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Dejil Sys., Inc.*, No. 12-CV-005 (JMF), 2012 WL 3744802, at *4 (S.D.N.Y. Aug. 29, 2012). Moreover, although Section 502(g) of the Employee Retirement Income Security Act ("ERISA") requires an award of attorney's fees to a plan that prevails in an action to recover delinquent contributions under a collective bargaining agreement, *see* 29 U.S.C. § 1132(g)(2)(D), "this does not necessarily mean that a successful party is also entitled to its costs and attorney's fees in bringing a petition to confirm an arbitration award," *E.g.*, *Abondolo v. Jerry WWHS Co.*, 829 F. Supp. 2d 120, 130 (E.D.N.Y. 2011); *TNS Mgmt. Servs.*, 2014 WL 100008, at *4; *Dejil Sys.*, 2012 WL 3744802, at *4.

Nonetheless, "because a court may, in the exercise of its inherent equitable powers, award attorney's fees when opposing counsel acts in bad faith, attorney's fees and costs may be proper when a party opposing confirmation of arbitration award 'refuses to abide by an arbitrator's decision without justification.'" *E. Millennium Constr., Inc.*, 2003 WL 22773355, at *2 (quoting *Int'l Chem. Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985)); *see also, e.g.*, *TNS Mgmt. Servs.*, 2014 WL 100008, at *4 (collecting cases).

Here, the Court need not decide whether the respondent refused to abide by the arbitrator's awards without justification because the Collection Policy obligates employers who fail to make timely contributions to the Funds to pay attorney's fees and costs incurred in recovering the delinquent contributions. (*See* Pet. Ex. B, arts. 1.1(C)(4), 6.2, 6.3.) This agreement is a sufficient basis upon which to award attorney's fees and costs. *See N.Y.C. Dist. Council of Carpenters Pension Fund v. Dafna Constr. Co.*, 438 F. Supp. 2d 238, 242 (S.D.N.Y. 2006) ("Whether [the defendant] had no justification in refusing to comply with the arbitrator's ruling is irrelevant, however, because the Agreement itself requires [the defendant] to pay attorneys' fees incurred by the Trustees in seeking confirmation. . . . Since the parties bargained for the awarding of attorneys' fees in this precise circumstance, the Court respects their agreement and orders [the defendant] to pay the costs incurred by the Trustees in seeking confirmation of the arbitrator's award."); *see also Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Alliance Workroom Corp.*, No. 13-CV-5096 (KPF), 2013 WL 6498165, at *6 (S.D.N.Y. Dec. 11, 2013) (holding that CBA authorized award of attorney's fees and costs in action to confirm arbitration award). Accordingly, the Court concludes that petitioners are entitled to recover attorney's fees and costs.

A. Attorney's Fees

The Court uses the "lodestar figure," which is determined by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate, to calculate reasonable attorney's fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997). "Both [the Second Circuit] and the Supreme Court have held that the lodestar . . . creates a 'presumptively reasonable fee.'" *Millea v. Metro–North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). "[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Perdue*, 559 U.S. at 553 (quoting *Pennsylvania v. Del.*

5

*Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565-66 (1986)). Thus, the Supreme Court has recognized that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.* at 551. "The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012).

1. Reasonable Hourly Rate

A "reasonable hourly rate" is "'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). This Court follows the Second Circuit's "forum rule," which "generally requires use of the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Id.* at 290 (quoting *Simmons*, 575 F.3d at 174). In *Arbor Hill*, the Second Circuit also instructed district courts to consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). *See* 522 F.3d at 190. The twelve *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (quoting *Johnson*, 488 F.2d at 717-19). "The burden rests with the prevailing party 'to justify the reasonableness of the requested rate.'" *Hugee*, 852 F. Supp. 2d at 298 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

Courts in this district have concluded that approximately $200 to $325 is a reasonable hourly rate for senior associates, and that $100 to $200 is a reasonable hourly rate for more junior associates. *See, e.g.*, *Pall Corp. v. 3M Purification Inc.*, Nos. 97-CV-7599 (RRM)(ETB), 03-CV-0092 (RRM)(ETB), 2012 WL 1979297, at *4 (E.D.N.Y. June 1, 2012) (collecting cases). Of course, "the range of 'reasonable' attorney fee rates in this district varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys." *Siracuse v. Program for the Dev. of Human Potential*, No. 07-CV-2205 (CLP), 2012 WL 1624291, at *30 (E.D.N.Y. Apr. 30, 2012).

Petitioners request an hourly rate of $225 for Virginia & Ambinder, LLP ("V&A") associates, Nicole Marimon and Joseph Indelicato and former V&A law clerk, Jesse Isleman. Ms. Marimon is a 2014 graduate of Fordham University

School of Law. (Pet. ¶ 34.) Mr. Indelicato and Mr. Isleman are 2016 graduates of the George Washington University Law School. (*Id.* ¶ 34; ECF No. 17.) Ms. Marimon avers that she "has handled the prosecution of several ERISA collection actions" (Pet. ¶ 34), and that the requested hourly rates are "similar to or lower than the rates typically charged by attorneys of commensurate skill and experience in similar actions [in the district]," (*id.* ¶ 37).

In light of the prevailing hourly rates in this district and all other factors set forth in *Arbor Hill* and *Johnson*, the Court concludes that the hourly rate of $225 is too high, given that Ms. Marimon graduated from law school in 2014 and Mr. Indelicato and Mr. Isleman graduated in 2016. Given their current levels of experience, the Court concludes in its discretion that Ms. Marimon's time shall be compensated at $175 per hour; Mr. Indelicato's time shall be compensated at $150 per hour; and Mr. Isleman's time shall be compensated at $150 per hour.[1]

    2. Reasonable Hours

Having determined a reasonable hourly rate for petitioners' counsel, the Court must determine the reasonable number of hours expended by petitioners' counsel in this litigation.

"The party seeking attorney's fees also bears the burden of establishing that the number of hours for which compensation is sought is reasonable." *Custodio v. Am. Chain Link & Const., Inc.*, No. 06-CV-7148 (GBD) (HBP), 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13, 2014) (citing *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994)). "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" *Id.* (quoting *Hensley*, 461 U.S. at 434; then qutoing *N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)); *see also Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("We do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items.").

Petitioners have submitted an invoice for professional services rendered by V&A in connection with the instant action. (*See* Pet. Ex. G.) The invoice shows that Ms. Marimon billed 2.6 hours on this matter, Mr. Indelicato billed 3.6 hours on this matter, and Mr. Isleman billed 3.4 hours on this matter. (*See id.*)

At the outset, the Court concludes that the invoice satisfies the contemporaneous records requirement. Courts accept an invoice that provides "a clear description of the work performed, the time spent on the respective matter, the attorney who rendered services, and the date the services were performed." *Big R Food Warehouses v. Local 338 RWDSU*, 896 F. Supp. 292, 295 (E.D.N.Y. 1995); *see, e.g.*, *Fuerst v. Fuerst*, No. 10-CV-3941, 2012 WL 1145934, at *4 (E.D.N.Y. Apr. 5, 2012); *Home Loan Inv.*

---

[1] Petitioners also note that V&A billed legal assistants' time at a rate of $100 per hour for work performed in connection with this action. (*See* Pet. ¶ 36.) However, the V&A invoice submitted does not reference any work performed by any legal assistants, and petitioners do not appear to request any fees for legal assistants' work. (*See id.* Ex. G.)

7

*Bank, F.S.B. v. Goodness & Mercy, Inc.*, No. 10-CV-4677 (ADS)(ETB), 2012 WL 1078963, at *7 (E.D.N.Y. Jan. 4, 2012), *report and recommendation adopted*, 2012 WL 1078886 (E.D.N.Y. Mar. 30, 2012); *New Paltz Cent. Sch. Dist. v. St. Pierre*, No. 02-CV-981 (FJS)(RFT), 2007 WL 655603, at *2 (N.D.N.Y. Feb. 26, 2007). The invoice submitted by petitioners provides this information in sufficient detail, as it includes a description of the work performed by Ms. Marimon, Mr. Indelicato, and Mr. Isleman, the dates on which they performed the work, and the amount of time spent on the various projects (*see* Pet. Ex. G), and Ms. Marimon avers that this information was entered contemporaneously as the work was performed (*see* Pet. ¶ 33).

Finally, the Court concludes that the 2.6 hours billed by Ms. Marimon, the 3.6 hours billed by Mr. Indelicato, and the 3.4 hours billed by Mr. Isleman on this matter are reasonable, given the description of the tasks performed and the fact that the motion was unopposed.

Accordingly, the Court calculates the lodestar figure to be $1,505.00.

The Court sees no reason to depart from the lodestar figure in this case. *See, e.g.*, *Perdue*, 559 U.S. at 553 (noting that lodestar figure includes "most, if not all," relevant factors in setting reasonable attorney's fee). Therefore, the Court awards the petitioners $1,505.00 in attorney's fees.

B. Costs

"As for costs, a court will generally award 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Pennacchio v. Powers*, No. 05-CV-985 (RRM)(RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011) (quoting *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). "The fee applicant bears the burden of adequately documenting and itemizing the costs requested." *Id.*; *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, No. 10-CV-696 (KAM)(SMG), 2013 WL 950573, at *10 (E.D.N.Y. Mar. 12, 2013). In particular, under Local Civil Rule 54.1, "the party must include as part of the request 'an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred,'" and "[b]ills for the costs claimed must be attached as exhibits." *D.J. ex rel. Roberts v. City of New York*, No. 11-CV-5458 (JGK)(DF), 2012 WL 5431034, at *9 (S.D.N.Y. Oct. 16, 2012) (quoting Local Civ. R. 54.1(a)), *report and recommendation adopted*, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012).

Here, the petitioners request $400.00 in litigation costs for the filing fee and service fees. (*See* Pet. ¶ 39.) This cost is recoverable, and the Court has determined that no additional documentation is necessary. *See Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor Mgmt. Cooperation, Pension & Welfare Funds v. Sanders Constr., Inc.*, No. 13-CV-5102 (JFB)(ARL), 2015 WL 1608039, at *6 (E.D.N.Y. Apr. 10, 2015).

Accordingly, the Court awards petitioners $400.00 in costs.

## IV. Conclusion

For the reasons set forth above, the Court confirms the arbitration awards in the amounts of $49,817.05 and $9,263.89. Further, the Court awards petitioners $1,505.00 in attorney's fees and $400.00 in costs. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 27, 2018
Central Islip, New York

\* \* \*

Petitioners are represented by Nicole Marimon of Virginia & Ambinder, LLP, 40 Broad Street, 7th Floor, New York, New York 10004. Respondent is represented by Melvin Bressler, 58 Tobey Court, Pittsford, New York 14534.